We'll just start right away then with United States v. Gibson, 20-3-0-4-9. Please proceed. Good morning. May it please the Court, Catherine Gregory, Assistant U.S. Attorney representing the United States. This case presents a narrow but important question, whether the district court erred when it used a time-of-sentencing approach with respect to the career offender enhancement. Can you speak up a little bit, please? Yes. This narrow but important question is whether the district court erred when it used a time-of-sentencing approach with respect to the career offender enhancement. The government submits that the district court did commit a procedural error when it used that time-of-sentencing approach because it is contrary to the reasoning of this Court's decision in Dobie Sessions. The text of the enhancement, its purpose— Why is the time-of-sentencing important rather than the time of commission of the crime? I'm sorry. Could Your Honor repeat the question? Well, I know we're focusing on the time of sentencing, and I realize that in this case it might not make a difference, but why isn't the time of the commission of the crime the key point at which we should be looking at? Well, in this case, Your Honor, I'm not sure that that would make a difference. That particular question wasn't raised below. I do know that that came up in the First Circuit case that dealt with this. In this case, I don't think that it would have made a difference whether it was the time of the commission in 2002 of that offense versus the time of conviction. I believe that's what you're asking. But if at the time of the commission of the offense the law had changed in the defendant's favor, wouldn't that be the time to look at rather than the time of sentencing? Do you mean the time of Federal sentencing? Yes. And do you mean the commission of the State offense? The usual rule is that we get to ask the questions, but go ahead. I'm sorry. The answer we're looking at to determine whether he's a career offender. I think that the correct approach would be to use the time of the prior State conviction. So just like in Federal sentencing, you know, we go with what's that date. I think that the prior State conviction, and, again, this wasn't argued below, so I'm just trying to answer your question as best I can, would be to go with the time of the sentencing, which is what I believe the McNeil court said is what we use, so we use. That was dealing with the ACCA, but they said we look at the State statute and the State schedules from the time of conviction. But isn't that inconsistent with the idea that for sentencing purposes we use the guidelines that are in effect at the time of sentencing? And if the analysis as to the controlled substance schedule requires that, I mean, if that's tied to the sentencing, why wouldn't we, in determining whether or not someone has a prior for controlled substance offense, look to the time of sentencing? I think the fact that we use the current sentencing guidelines is a bit of a red herring. The current sentencing guidelines were used in this case. The district court used the most current version of the enhancement. I don't even think the enhancement changed between 2002 and 2020. But don't we incorporate the guidelines in applying the, excuse me, incorporate the controlled substance schedule in applying the sentencing guidelines? How can you separate those out? Well, the drug schedule itself is not part of the sentencing guidelines, so it's promulgated. Right, but we look to that when we're applying the sentencing guidelines, correct? No, we should look to the time. That's not what Townsend said? No, this issue was not raised in Townsend. Not the timing issue, but the fact that we look to the federal controlled substance schedule in deciding whether or not a prior conviction counts as a controlled substance offense. We have to look at the schedule, the federal schedule. Yes, we have to look at the Controlled Substances Act. Yes, that's what Townsend held. So it confirmed that that's where we go to do that comparison. So the reason that it did not come up in Townsend is because Mr. Townsend was convicted under a different subsection of the New York Penal Law, 22031, I believe, which refers to controlled substances, and that's a defined term in New York State law. Mr. Gibson was convicted of 22039, which uses the term narcotic drug, which is a narrower definition under New York State law. So I believe that that's why the timing issue was not raised in Townsend, and it was confirming that we used the Controlled Substance Act, but it did not come up. The court didn't address it. So I don't think that Townsend conflicts with Doe. I don't think it conflicts with the timing conviction. Have we ever said that the federal drug schedules are not part of the sentencing guidelines? Have we ever held that? Because that's what you're asking us to agree with. Is that correct? I think that's correct. Okay, so have we ever held that? No. And just to pick up on just Lee's question, Townsend, I think you might agree but maybe not, certainly suggests that the federal drug schedules are part of the sentencing guidelines. Is it not? I don't think it suggests that it's part of the guidelines. When the guidelines are referring to a controlled substance offense, we need a point of reference for that, and Townsend concluded, as many of the other court appeals have, is that the Controlled Substance Act is where we look to define that. But this is a historical inquiry. The enhancement is looking at a snapshot in time. It is trying to define that prior offense and figure out what were the elements, what were the penalties, what was it. And looking at the drug schedule, federal drug schedule, from that time of conviction captures that much more accurately than looking at how the DEA has tinkered with it 10, 20 years later. But why do you say that it captures it in a way that complies with the rule of entity? Would you agree that there is some ambiguity here, Elise? Given Dovie Sessions, no. Dovie Sessions seems fairly clear on this issue. I would. Although Dovie Sessions was an immigration case. It wasn't a criminal. It concerned removal, but it's not as if it was about asylum or temporary protected status. It was looking at criminal statutes. It was looking at which drug schedules do we look at. But it didn't have to address the sentencing guidelines the way a criminal case does. It's not the same as this situation. No, it's not the exact same situation. But even Townsend referenced an immigration case when it was looking at the criminal law. It cited Harbin v. Sessions because Harbin v. Sessions, although not a criminal case, was looking at what Townsend was concerned with. So it's not as if this Court has held that we look at criminal cases in an immigration context differently than we're going to look at it. And most importantly, Dovie Sessions did not limit itself to an immigration sphere. It was concerned explicitly with the categorical approach to statutory interpretation. And this Court explicitly said that— It doesn't have to limit itself. It is about immigration. So how would it have limited itself to the immigration sphere? By saying the panel would have said this is limited to an immigration context. No. And I say that because Mr. Gibson appears to argue in his brief that this was primarily a Padilla issue. But this Court said that the starting point for the categorical approach, which is writ large, would be using the CSA schedules in effect at the time of conviction. So there's no reason for that look, this Court's reasoning, this look at the categorical approach at large not to apply in this kind of situation. So I see that my time is about to expire. If there are no further questions on this, I'll save my remaining arguments for above. We'll hear from Mariano. Good morning. Good morning, Your Honor. May it please the Court, my name is Mary Ann Mariano. I'm the Federal Defender in the Western District of New York. I represent Vincent Gibson in this matter. Mr. Gibson's, I beg your pardon, Judge Villardo's sentence should be affirmed in this case as it was procedurally reasonable. Judge Villardo properly calculated the sentencing guideline range by applying the guidelines in effect at the time of sentencing, as required by the Sentencing Reform Act, the guidelines, and this Court's precedent. Specifically, employing the categorical approach, Judge Villardo determined that the career offender enhancement should not apply by comparing the elements of Mr. Gibson's 2002 conviction for 22039 of the New York Penal Code to the elements of controlled substance offense under the guidelines, career offender guidelines, at 4B1.2 at the time of sentencing, and determined that New York criminalized the substance that the Controlled Substances Act does not, therefore is overbroad and not a predicate. This Court's decision in Townsend controls that decision. Townsend illuminated the meaning of controlled substance offense in the career offender guideline. It provided that the words controlled substance in the guideline phrase controlled substance offense means substances scheduled under the CSA codified at 21 U.S.C. 802. The guidelines incorporate those schedules. This is not unusual. The guidelines incorporate many definitions from different statutes, including things like certain firearms or destructive device from Title 26, Section 5845. There are numerous examples of provisions in the guidelines that incorporate statutory definitions. That doesn't really get us to where I think you need to be. Yes. So why don't you get to the second step, please? Yes. Having now identified what the Court must compare, Judge Villardo then looked to the guidelines in effect at the time of sentencing. This is a congressional mandate codified at 3553A, included in the guideline provisions at 1B.11. Guidelines in effect at the time of sentencing must apply unless there is an ex post facto issue. And it is exactly what this Court held in United States v. Westcott, which I think controls the outcome here. In Westcott, Mr. Westcott was convicted of illegal reentry after deportation. He had a prior offense committed before his deportation for robbery. At the time of that prior offense, that conviction would not have been an aggravated felony under the guidelines. By the time of the commission of the crime of illegal reentry and his sentencing for that offense, the guidelines included that prior as a trigger for the aggravated felony enhancement. And the Court applied a 16-level bump increase to his base offense level based on it. Could you speak, though, to how that, with regard to the prior offense that's at issue in this case and why it's your argument that it is not a controlled, it does not qualify here. Sorry. I don't understand what I'm asking. Specifically to address the New York statute, the question of whether or not this New York conviction qualifies. So here the government concedes for the purposes of Mr. Gibson's appeal that at the time, sorry, that the New York definition for narcotic drug as used in Section 22039.1 means controlled substance offenses listed in the New York Public Health Law at 3606, Schedules I, B, and C, and II, B, and C. Those schedules include all derivatives of opium and opiates, which include naloxagol. In 2015, the DEA took naloxagol, a derivative of opiate, off of the federal controlled substance list. After 2015, the New York statute is overbroad. So there's a mismatch. There is a mismatch. But that mismatch is the result of a change in law, federal law, since the conviction. Yes. Since the state conviction. Correct. So that takes us outside of the field of Townsend. Because in Townsend, there was a mismatch from the beginning between the federal law and the state conviction. Is that right? It takes us to a different issue than the one in Townsend. Townsend did not have occasion to address this precisely. Because yes, the statute was the same at the time of the prior and the time of the federal conviction. And so the government's point, I take it, is that we risk chaos. It's not a textual point. I think it's a policy point. But we risk chaos. If district court judges need to look at every change in federal law and the federal schedule in connection with determining whether there's a mismatch, so why not look back at the time of the conviction or the commission of the crime to determine whether an enhancement applies? So the chaos actually would occur under the government's back at time of conviction approach. And here's why. First and foremost, there is a time of sentencing mandate. We apply the guidelines at the time of sentencing. If we were to go back to the time of conviction, in a case where there are multiple convictions, a district court would have to look at not only the meaning of controlled substance offense under the career offender guidelines at every juncture where there is a potential predicate. The guidelines don't operate that way. That's exactly what this court said. We don't go back to say what was in 2L1.2 at the time of that prior conviction and not treat Mr. Westcott as a person with an aggravated felony. We look at the time of conviction. Would you just briefly address DOE and the fact that we have applied DOE in different criminal cases so that it's not limited, as the government argued, to the immigration context? So DOE is distinguishable both statutorily and for constitutional principles. First and foremost, there is no statutory choice of law provision in the Immigration and Naturalization Act. Here in the guidelines, we do have a choice of law at the time of sentencing. In DOE, this court said that the critical time for a defendant to understand the consequence of a prior conviction in the immigration context is at the time of that prior conviction. This is a PDEA concept. It's because the immigration consequence adheres at the time of that conviction, and whether or not that person is removable, therefore, adheres at the time of the prior conviction. Whether a guideline provision applies certainly doesn't adhere at the time of that prior conviction and is not knowable. First and foremost, there has to be at least one intervening event. That event has to be the commission of a qualifying federal offense to trigger the career offender guideline itself, which would be for a controlled substance offense or crime of violence. Furthermore, any change in the guideline, any change from the time of that prior until the sentencing for the federal offense will apply to the defendant. You would not go back and apply a guideline provision back at the time of the prior offense. For example, the residual clause is no longer in the guidelines. Burglary is no longer in the guidelines. If in 2002 Mr. Gibson had been convicted of burglary, we would not go back to the 2002 guidelines and apply the definition of crime of violence. We have to look at the definition as it exists today, and that definition, Townsend says, are the controlled substances listed in the Controlled Substances Act. I would also note that whether or not this enhancement is triggered doesn't erase the existence of this prior. The prior will still be used to calculate the criminal history category. It could be used to upwardly depart if a court finds that the criminal history category, without the enhancement, doesn't adequately reflect a defendant's criminality, and most certainly the history and characteristics of a defendant will be considered by a court at sentencing under 3553A. The fact that an enhancement doesn't apply under the current application of the guidelines doesn't erase the existence of that prior. We respectfully ask this court to join all of its sister circuits to consider this issue and affirm Mr. Gibson's sentence below. Thank you. We'll hear from the government upon rebuttal. Thank you. To the point that the drug schedule should be treated as if they're guidelines, Townsend saying that in applying the guidelines we look to the Controlled Substances Act does not mean that it's incorporated as part of the guidelines any more than when the guidelines say we look to. Do we need to even say that? In other words, do we need to say that as a technical matter, the guidelines incorporate the schedule, as opposed to in the minor amount of cases district court judges, when they're considering the guidelines, they need to look to the schedule. Is there a meaningful difference between those two things as a practical matter? Yes, there is. So when the guidelines direct us to look towards, let's say, determining whether a prior conviction is a misdemeanor or a felony, it doesn't mean that the guidelines are incorporating the state law into the guidelines. We don't apply the current state law, just as McNeil says that that's the wrong approach. So just because Townsend says we need to look at the Controlled Substances Act does not mean that we should use that current federal drug schedule to define that historical fact, that historical conviction. And I just, if I see my time is running out quickly, I would like to give one example. So this time of conviction approach promotes fairness, notice, due process, all of the things that this court raised with good reason in Doe. While the time of sentencing approach today could work in Mr. Gibson's favor, it presents a moving target. The issue, I think, but you can correct me if I'm wrong, with importing the INA analysis, the immigration analysis into a criminal case, is that I think that in immigration cases it is seminally important. The time of conviction has immigration consequences, removability consequences. So that's what we look at. In the criminal context, but Ms. Gregory, you know, please correct me if you think I'm totally wrong, that is not the seminal focus, right? The focus is on the federal crime and on the criminal history background. We're not focused exclusively on the time of state conviction. May I answer that? Sure, of course. So I'm trying to collect my thoughts. It's a multi-part question. So the time, yes, in immigration cases, the primary concern is the removal and the deportation, which tends to be an automatic consequence. Yes. That does not mean that this Court does not look to its immigration cases in the criminal context. It does this very often. In its categorical interpretation cases, it almost always looks to at least one immigration case that's looking at the criminal context. As I said, Townsend looked to Harbin v. Sessions. There's no reason that this Court could not look to, or should not look to Doe for that same reasoning. But I guess the distinction I'm trying to draw is that there is no temporal mandate in immigration cases. The temporal mandate, though, goes to whether or not the federal drug schedule is considered part of a guideline. So the DEA, whenever it amends the drug schedule, is not amending the guidelines. We wouldn't say that every time the DEA changes, removes a substance, it is amending the guidelines. So saying that there's this temporal requirement, yes, no one is disputing that we must apply the most current version of the enhancement, but the purpose of the enhancement is to define this historical conviction. And Doe raised very, very apt concerns about notice, fairness. When that — when a defendant is convicted in State court under the time-of-conviction approach, he knows forever going forward whether or not those schedules match. It does not change. Under the time-of-sentencing approach, day-to-day, depending on what the DEA does, he may or may not know whether or not those are going to match. Well, here it inures to the defendant's benefit. I mean, there's a rule of entity issue that may or may not apply, I understand your view, that's in the background in a way that is not in the background for immigration cases. And I think your argument here is that even if your approach inures to the benefit of the government, not to the defendant, and hurts the defendant, that's okay. That's actually consistent with our rule of entity. I wouldn't say it's the government's approach because this Court did endorse the time-of-conviction approach in Doe v. Sessions. And that might be parsing the words a little bit. But I think that there were very real concerns raised by this Court in Doe and also by Judge Cook in the concurrence in U.S. v. Williams in the Sixth Circuit about the implications of this rule, which, again, I understand that today it would work against Mr. Gibson, but at least it would provide that notice. Now, that doesn't mean he would be entitled to a warning, such as like a PDA warning, but that means that the information is there. If I can just jump in, I'm glad you raised that because looking again to why the immigration context seems very different is you have a constitutional right when you're pleading guilty to know about your immigration consequences. So it's not just we like to have predictability. There's a constitutional right to know the consequences when it relates to immigration because in that moment of pleading guilty, it can have those future consequences. That's very different from saying that when someone is pleading guilty in state court to an offense that they're entitled to know if 15 years down the road when they have a subsequent offense, it's going to mean that your federal sentence is going to be longer. It just seems like a very different context and different right and issue that's at play in the immigration context. Right, and that's why I say it wouldn't be, it couldn't be a PDA-like entitlement to that kind of warning because the enhancement could change, the sentencing guidelines could change. But under the time of conviction approach, whether or not those drug schedules are comparable would not change. That would be fixed. So he would have notice at least of that, and it wouldn't change day to day, year to year, based on the fortuities of the DEA rulemaking. So I see that my time is well past expired. Unless the panel has any further questions, I would just say that Doe v. Sessions remains good precedent in this circuit. Its reasoning is sound, and it should be applied in this case. One more question. Do you agree with Ms. Mariano that every other circuit to have considered this issue has taken a position or held in a way that differs from the approach you want us to embrace? The three circuits that have decided this issue have decided against the time of conviction approach. However, each one of them dismissed Doe v. Sessions' reasoning outright, and the First Circuit said the reasoning was just plain wrong and that it was also an immigration case. It is pending, I believe, before the Eighth and Third Circuits. So, yes, the three other circuits have decided against this approach, but they do not have the authority of Doe v. Sessions in those circuits. Thank you very much for the decision.